# WHEELING.

## FEAMSTER *v.* FEAMSTER.

Sumbitted January 29, 1902.    Decided June 7, 1902.

1. SYLLABUS—*Announces Questions of Law.*
      A case in which only a question of fact dependent on evidence is involved, no syllabus of law is necessary or made. (p. 508).

Appeal from Circuit Court, Greenbrier County.

Bill by S. W. N. Feamster against Joseph A. Feamster and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

JOHN W. HARRIS and JOHN W. ARBUCKLE, for appellants.

PRESTON & WALLACE, for appellee.

Brannon, Judge:

A tract of land was sold at a judicial sale as the property of Joseph A. Feamster and purchased by his brother, S. W. N. Feamster, commonly called Newman Feamster, who took the deed in his own name. Afterwards Newman Feamster filed a ·bill of injunction in the circuit court of Greenbrier County against Joseph A. Feamster, alleging that the land belonged to Newman Feamster, and that Joseph ·A. Feamster and Knapp were cutting timber thereon, and obtained an injunction restraining the cutting of timber, which was dissolved. Afterwards Newman Feamster filed a second bill in the same court, alleging that he had purchased the said tract, and that Joseph A. Feamster was living on it by permission of Newman Feamster, and that he, Newman Feamster, had made a contract with one Shrader to set a saw-mill on the land and saw logs which Newman Feamster was to take to the mill; that Shrader had sawed and stacked a large lot of lumber under the contract and was still going on with his contract; that Newman Feamster had learned that Joseph A. Feamster had sold to Knapp two car loads of the lumber stacked on the yard by Shrader for Newman Feamster, and that they had hauled the same to the railroad for shipment; and the bill asked for an injunction to restrain Feamster and Knapp from selling or removing any more lumber from the land or the mill yard thereon, and from shipping any of said lumber off by the railroad. The injunction was granted. Joseph A. Feamster answered this bill, setting up that Newman Feamster had purchased the land at the judicial sale in truth for the benefit of Mary Feamster, the wife of Joseph Feamster, and that she had paid Newman Feamster the purchase money which he had paid for the land, and that she had for years been occupying and improving· the same. Newman Feamster thereupon filed an amended bill making Mary Feamster a party, alleging that she was a necessary party to enable the court to make a final decree, as she claimed to be the owner of the tract, and that Joseph A. Feamster was taking timber therefrom under her right, and praying that her claim might be determined by the court, and that a decree might be entered in his favor adjudging the land to be his and perpetuating the injunction.

Mary Feamster filed an answer claiming that Newman Feam-

ster had bought the land in trust for her, and that her husband had caused timber to be cut thereon and converted and sawed into lumber in order to raise money to repay Newman Feamster seven hundred dollars, which he had expended in the purchase of the land; that Newman Feamster had agreed to accept such lumber as payment of the purchase money, and that Shrader had cut, stacked and delivered to Newman Feamster, at his request, lumber amply sufficient to discharge his claim for purchase money; that Newman Feamster had interfered in the process of the production of the lumber, and by reason thereof good logs had rotted and wasted in the woods after being cut ready for the mill, thus entailing loss upon Mary Feamster, for which she claimed damage. The answer prayed that the injunction might be dissolved and that the debt for purchase money might be declared satisfied and that the deed made to Newman Feamster might be declared to be held in trust for her benefit, and that he might be compelled to convey the land to her. A decree was entered declaring that Newman Feamster had in truth purchased the land in trust for the benefit of Mary Feamster. This decree is not in question upon this appeal. It was pronounced upon oral evidence heard by the chancery court by consent of parties, and is not, and cannot be appealed from. That decree, however, referred the case to a commissioner to state an account of the amount, if any, due Newman Feamster upon the land, charging Mary Feamster with seven hundred dollars as the purchase price of the land, and with taxes paid by Newman Feamster, and giving credit to Mary Feamster for all sums received by Newman Feamster, whether in lumber or money. Many depositions were taken before the commissioner and he reported a balance in favor of Newman Feamster of one thousand and fifteen dollars and fifty-six cents, for which balance a decree was entered against the land and directing its sale to satisfy such balance. From this decree Mary Feamster has appealed.

There is a great volume of evidence in the case, which I cannot detail. There is no controverted legal principle involved in the case. It involves only a question of fact. It is very true that where a report of a commissioner is upon facts only, it will not be set aside in an appellate court unless plainly not warranted by any reasonable view of the evidence; but it is not as conclusive as the verdict of a jury. It is not necessary to enter

into a long detail of the facts. It does seem to me that the evidence fully shows that an amount of lumber from the land was delivered to Newman Feamster to fully discharge the debt. A detail of my reasons for this conclusion would be tedious and unprofitable and constitute no precedent for other cases. When Joseph A, Feamster made a contract with Shrader to saw the lumber it was distinctly understood between Joseph A. and Newman Feamster that the lumber was to go to Newman Feamster to pay off the purchase money. Besides, Newman Feamster, it seems, would not let the lumber go, or rather would not let it be sawed, without making a contract with Shrader that Shrader was to saw and stack the lumber on the yard for and in the name of Newman Feamster. Shrader did manufacture and stack one hundred and two .thousand nine hundred and eighty feet of poplar, and twenty-four thousand eight hundred and eighty feet of oak. This lumber was sawed out of logs cut from the land when the legal title was in Newman Feamster, and he thus had absolute control over it, or the means of control. He admits that there was measured out to him fifty thousand five hundred and two feet of poplar out of that sawed by Erskine for Shrader, and twenty-four thousand eight hundred and eighty feet of oak sawed by Patton & Miller. All this lumber was in the control of Newman Feamster. It came from the mill with title to it in him. Even if he had only a lien on it, that gave him full power over it. It was agreed that it should go to him on his debt. If it did not do so it was his own negligence and fault. Joseph A. Feamster did haul some of that lumber away and sell some, but not enough to reduce the quantity lower than an amount ample to satisfy Newman Feamster's demand. In the bill in the first suit Newman Feamster treated this lumber distinctly as his property. He alleged in it that Shrader was to stack it on the yard for him, and that two car loads of the lumber had been sold by Joseph Feamster from the lumber thus stacked on the yard for Newman Feamster, and in other passages of the bill he stated, that lumber was his. Newman Feamster sued out a writ in detinue at Alderson to recover some of the lumber which had been hauled from the yard, thus asserting a property in it, and he told the justice that it was his lumber. In many ways he recognized this lumber as his. At that time the title to land and lumber was in him. The lumber came from the land. Equity required him to apply it to the debt. It

was entirely within his power to do so. It would be a great hardship upon Mrs. Feamster to denude the land of the timber and still leave it under a heavy debt, when the agreement and duty of Newman Feamster, as between him and Mary Feamster, demanded its application on the debt. I could go on and give items of evidence supporting this view; but to do so would be a prolix detail in nowise necessary or useful. It clearly appearing that an amount of lumber entirely sufficient to discharge Newman Feamster's demand came from the land into his hands, or under his power and control, which equity would require him to apply on the debt, we are justified in regarding the debt as satisfied. Therefore, we reverse the decree of December 1, 1899, and remand the case to the circuit court only for the purpose of having a decree entered for the conveyance of the land by Newman Feamster to Mary Feamster, and then to dismiss the bill, which decree the circuit court is directed to enter.

*Reversed.*